FULTON v WILLIAM BEAUMONT HOSPITAL

Docket No. 225174. Submitted January 7, 2002, at Detroit. Decided September 20, 2002, at 9:00 A.M. Leave to appeal sought.

Julie and Paul Fulton brought an action in the Oakland Circuit Court against William Beaumont Hospital and others, alleging medical malpractice relating to a loss of an opportunity to survive as a result of the defendants' failure to make an earlier diagnosis and treatment of Julie Fulton's cervical cancer. After Julie Fulton died of cancer, Paul Fulton, as personal representative of the decedent's estate, filed an amended complaint to take into account her death. The plaintiff presented expert testimony indicating that the decedent would have had an eighty-five percent chance of survival had the defendants timely diagnosed and treated the cancer, and that the decedent's chance of survival had decreased to sixty to sixty-five percent by the time the defendants diagnosed the cancer. The defendants moved for summary disposition, arguing that under MCL 600.2912a(2) a medical malpractice plaintiff cannot recover for loss of an opportunity to survive or loss of an opportunity to achieve a better result unless the opportunity was reduced by more than fifty percent as a result of the alleged malpractice, and that such a reduction was not alleged by the plaintiff in this case. The court, Richard D. Kuhn, J., denied the motion, agreeing with the plaintiff that MCL 600.2912a(2) requires instead that the initial opportunity to survive be greater than fifty percent. The defendants appealed by leave granted.

The Court of Appeals *held*:

MCL 600.2912a(2) provides: "In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants. In an action alleging medical malpractice, the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than 50%." The second sentence of the statute is ambiguous because "opportunity," as used in that sentence can either mean initial opportunity to survive or achieve a better result, or loss of opportunity to survive or achieve a better result. The ambiguity must be resolved in favor of

the latter meaning, i.e., loss of opportunity to survive or achieve a better result, because the Legislature enacted MCL 600.2912(a) as a rejection of the holding in *Falcon v Memorial Hosp*, 436 Mich 443 (1990), that a 37.5 percent decrease in the opportunity to survive was substantial and actionable. Thus, MCL 600.2912(a) requires a showing that the loss of opportunity to survive or achieve a better result exceeds fifty percent.

Reversed.

SMOLENSKI, J., dissenting, stated that the trial court's decision should be affirmed. The ambiguity in the second sentence of MCL 600.2912(a) with respect to the meaning of "opportunity" is best resolved by holding that "opportunity" refers to the initial opportunity to survive or achieve a better result. While the majority's observation that the Legislature enacted MCL 600.2912(a) in response to *Falcon* is correct, the 37.5 percent opportunity in *Falcon* represented both the initial opportunity to survive and the reduction in the opportunity to survive. What the Legislature rejected in adopting MCL 600.2912(a) was the lost opportunity doctrine that allowed a plaintiff to recover even though it was more probable than not that the plaintiff would not have survived even if there had been no negligence. Thus, MCL 600.2912(a) only requires a plaintiff to show that the decedent's initial opportunity to survive was greater than fifty percent and that the alleged malpractice more probably than not reduced that opportunity to survive.

NEGLIGENCE — MEDICAL MALPRACTICE — LOSS OF OPPORTUNITY TO SURVIVE OR ACHIEVE A BETTER RESULT.

A medical malpractice plaintiff seeking recovery for loss of an opportunity to survive or achieve a better result must show that the alleged malpractice reduced the opportunity by more than fifty percent (MCL 600.2912[a]).

*Richard A. Lenter* (*Sommers, Schwartz, Silver & Schwartz, P.C.*, by *Patrick Burkett*, of counsel), for the plaintiff.

*Dickinson Wright PLLC* (by *Barbara Hughes Erard* and *Shari M. Borsini*) for the defendants.

Before: TALBOT, P.J., and SMOLENSKI and WILDER, JJ.

TALBOT, P.J. In this medical malpractice action, defendants[1] appeal by leave granted from the trial court's order denying their motion for summary disposition. We reverse.

### I. FACTS

On February 15, 1995, Julie Fulton went to see Dr. Deborah Eldridge, a specialist in obstetrics and gynecology, for a prenatal examination. Dr. Eldridge performed an examination and noted that Fulton's cervix was long, closed, thick, and friable, meaning that it bled easily. Dr. Eldridge believed that these conditions were not abnormal for a pregnant woman such as Fulton. Dr. Eldridge also performed a routine pap smear and sent the sample to a Beaumont Hospital laboratory for examination. The cytopathology report from Beaumont stated that the pap smear specimen was "Less Than Optimal," but was within normal limits and contained no cellular abnormalities. Dr. Eldridge did not know what "Less Than Optimal" meant, but she felt that the result of the pap smear was "satisfactory enough to give an overall diagnosis of within normal limits and no abnormal cells." As a result, Dr. Eldridge did not give Fulton another pap smear during her pregnancy.

Fulton delivered her child by cesarean section on July 14, 1995. On July 21, 1995, and July 28, 1995, Fulton visited Dr. Eldridge to ensure that she was healing properly after the childbirth. On both visits,

---

[1] Defendants Pontiac General Hospital, doing business as North Oakland Medical Centers, and Dr. Deborah Margules Eldridge did not appeal the trial court's order. However, for ease of reference, this opinion will refer to defendants-appellants William Beaumont Hospital, Dr. T. Kuntzman, Dr. J. Watts, and Stephen Peters as "defendants."

Dr. Eldridge told Fulton to return in approximately four weeks for a standard postpartum pap smear and physical. However, because she was moving, Fulton did not return for the pap smear until November 1, 1995. At that appointment, Dr. Eldridge noticed that Fulton's uterus was enlarged, but she did not perform a pap smear because Fulton's cervix was bleeding too heavily. Dr. Eldridge told Fulton to return for the pap smear when the bleeding ceased or, in any event, to return in no later than three months. Fulton returned to Dr. Eldridge in December 1995 for the pap smear and physical. As a result of the pap smear performed at that time, Fulton was diagnosed with stage IIB cervical cancer.

On June 11, 1997, Julie Fulton and Paul Fulton (plaintiff) filed a medical malpractice action against defendants, alleging that defendants' failure to properly diagnose and treat Fulton resulted in a loss of Fulton's opportunity to survive. On April 5, 1998, Fulton died of complications related to cancer. On November 4, 1999, plaintiff, the personal representative of Fulton's estate, filed an amended complaint accounting for Fulton's death. Blue Cross Blue Shield of Michigan joined the action as an intervening plaintiff to enforce its rights. The Michigan Attorney General and Michigan Department of Community Health also joined the action as intervening plaintiffs.

Plaintiff's expert oncologist, Dr. Robert R. Taylor, testified in his deposition that Dr. Eldridge's observations on February 15, 1995, should have led her to suspect that Fulton may have been in the early stages of cervical cancer. Dr. Taylor interpreted Fulton's "Less Than Optimal" pap smear result to mean either that technical errors existed with the sample or that

the cells in the sample were obscured by blood cells, bacteria, or other organisms. Dr. Taylor opined that Dr. Eldridge breached the standard of care by failing to order a repeat pap smear for Fulton after the February 1995 examination and by failing to give Fulton a pap smear during her postpartum period. Dr. Taylor testified that a patient with early invasive cervical cancer, such as Fulton had in February 1995, had an eighty-five percent chance to survive. Before her death, Fulton testified that if she had been diagnosed with cervical cancer in February 1995, she would not have begun treating the cancer until after her child was born. However, Dr. Taylor testified that the child could have been safely delivered in early June 1995, and that Fulton's cancer could have been simultaneously removed through a radical hysterectomy. Dr. Taylor testified that Fulton's opportunity to survive did not decrease between February 1995 and June 1995. By the time Fulton's cancer was actually discovered in December 1995, Fulton's condition had progressed to stage IIB cervical cancer and it was too late to perform the radical hysterectomy. Dr. Taylor testified that a patient with stage IIB cervical cancer had a sixty to sixty-five percent chance to survive.

Defendants moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff could not show that their negligence was the cause of Fulton's death. In response, plaintiff submitted an affidavit from Dr. Taylor, opining that if Fulton's cancer had been diagnosed while she was pregnant and if she had been treated after her child was delivered, she would have had an eighty-five percent chance to survive. Dr. Taylor opined that when Fulton was actually diagnosed with cancer, her opportunity to survive had

decreased to sixty to sixty-five percent. Therefore, according to Dr. Taylor, Fulton's opportunity to survive the cancer decreased by twenty to twenty-five percent because of defendants' malpractice. In reply, defendants argued that Dr. Taylor's affidavit was improper because it contradicted his deposition testimony and that, in any event, this affidavit was not enough to create a question of fact under MCL 600.2912a(2).

In denying defendants' motion for summary disposition, the trial court concluded that there were three elements that a plaintiff had to show in a loss of opportunity to survive medical malpractice case: (1) the defendant breached the medical standard of care, (2) the plaintiff's injury, the loss of opportunity to survive, was more probably than not caused by the defendant's negligence, and (3) the plaintiff's initial opportunity to survive was greater than fifty percent. The trial court determined that there was no dispute that defendants breached the medical standard of care in failing to timely diagnose and treat Fulton. The trial court also noted that plaintiff had presented evidence that defendants' malpractice more probably than not caused Fulton's injury, her loss of opportunity to survive. Finally, the trial court concluded that MCL 600.2912a(2) only required plaintiff to show that the initial opportunity to survive was greater than fifty percent. Therefore, the trial court ruled that because plaintiff had presented evidence that Fulton's initial opportunity to survive before the alleged malpractice was eighty-five percent, plaintiff had shown a question of fact under MCL 600.2912a(2). The trial court then entered an order denying defendants'

motion for summary disposition. This Court granted defendants' application for leave to appeal.

## II. STANDARD OF REVIEW

On appeal, defendants argue that the trial court misapplied MCL 600.2912a in denying their motion for summary disposition. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 62; 642 NW2d 663 (2002).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). *Quinto v Cross & Peters Co*, 451 Mich 358; 547 NW2d 314 (1996). [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).]

Similarly, questions of statutory interpretation are reviewed de novo. *Roberts, supra* at 62.

> An anchoring rule of jurisprudence, and the foremost rule of statutory construction, is that courts are to effect the intent of the Legislature. *People v Wager*, 460 Mich 118, 123 n 7; 594 NW2d 487 (1999). To do so, we begin with an examination of the language of the statute. *Wickens v Oakwood Healthcare System*, 465 Mich 53, 60; 631 NW2d 686 (2001). If the statute's language is clear and unambiguous, then we assume that the Legislature intended its plain meaning and the statute is enforced as written. *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001). A necessary corollary of these principles is that a court may read noth-

ing into an unambiguous statute that is not within the mani-
fest intent of the Legislature as derived from the words of
the statute itself. *Omne Financial, Inc v Shacks, Inc*, 460
Mich 305, 311; 596 NW2d 591 (1999). [*Roberts, supra* at 63.]

"Only where the statutory language is ambiguous may
a court properly go beyond the words of the statute
to ascertain legislative intent." *Sun Valley Foods Co v
Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). Judi-
cial construction is appropriate where reasonable
minds can differ regarding the meaning of the statute.
*Adrian School Dist v Michigan Public School Em-
ployees' Retirement System*, 458 Mich 326, 332; 582
NW2d 767 (1998).

### III. ANALYSIS

MCL 600.2912a(2) governs the burden of proof
requirements for actions alleging medical malpractice,
and provides:

> In an action alleging medical malpractice, the plaintiff has
> the burden of proving that he or she suffered an injury that
> more probably than not was proximately caused by the neg-
> ligence of the defendant or defendants. In an action alleging
> medical malpractice, the plaintiff cannot recover for loss of
> an opportunity to survive or an opportunity to achieve a
> better result unless the opportunity was greater than 50%.

The issue before this Court is whether the second
sentence of the statute requires a plaintiff in order to
recover for loss of an opportunity to survive to show
only that the initial opportunity to survive before the
alleged malpractice was greater than fifty percent, as
argued by plaintiff, or, instead, that the opportunity to
survive was reduced by greater than fifty percent

because of the alleged malpractice, as argued by defendants.

This Court previously addressed this issue in *Wickens v Oakwood Healthcare System*, 242 Mich App 385; 619 NW2d 7 (2000), rev'd in part and vacated in part 465 Mich 53; 631 NW2d 686 (2001). In *Wickens*, the plaintiffs' expert witness testified that before the defendants' alleged malpractice, Sandra Wickens' opportunity to survive was fifty-five to seventy percent. *Id.* at 387. When she was diagnosed with cancer, her opportunity to survive was fifteen percent. *Id.* Therefore, her opportunity to survive decreased by forty to fifty-five percent as a result of the malpractice. *Id.* This Court agreed with the plaintiffs' argument that MCL 600.2912a(2) allows for recovery when the initial opportunity to survive before the alleged malpractice is greater than fifty percent. *Wickens, supra* at 390. In doing so, this Court stated that MCL 600.2912a(2) only "requires plaintiffs in medical malpractice actions seeking recovery for loss of an opportunity to survive or an opportunity to achieve a better result to show that, had the defendant not been negligent, there was a greater than fifty percent chance of survival or a better result." *Wickens, supra* at 392.

Our Supreme Court subsequently reversed in part and vacated in part this Court's decision. *Wickens v Oakwood Healthcare System*, 465 Mich 53; 631 NW2d 686 (2001). The Supreme Court held that a living person cannot recover for a loss of an opportunity to survive. *Id.* at 54, 60-62.[2] In so ruling, the Court con-

---

[2] Although Fulton was alive when the original complaint was filed, she died during the pendency of the action and plaintiff subsequently amended the complaint, proceeding as Fulton's personal representative.

cluded that "it was unnecessary for the lower courts to have addressed whether plaintiff had a cause of action solely on the basis of the reduction in her ten-year survival rate" and vacated that portion of this Court's opinion. *Id.* at 62.

The same issue is now before us. We decline to follow this Court's reasoning in *Wickens* for two reasons. First, we are not required to do so under principles of stare decisis because a majority of the Supreme Court vacated that portion of this Court's opinion regarding the interpretation of the second sentence of MCL 600.2912a(2) and did not express approval or disapproval of this Court's reasoning on the issue. Therefore, the *Wickens* panel's holding is not precedentially binding. See *Straman v Lewis*, 220 Mich App 448, 451; 559 NW2d 405 (1996). Second, this Court in *Wickens* did not acknowledge the ambiguity of MCL 600.2912a(2) or address the legislative intent behind the statute in reaching the conclusion that it did.[3] Accordingly, we are not bound by the decision, nor do we find it persuasive.

In examining the second sentence of MCL 600.2912a(2), it is not clear to what the Legislature

Therefore, plaintiff's claim for loss of an opportunity to survive is proper under the rule of law set forth in *Wickens, supra*, 465 Mich 54, 60-62.

[3] The dissent disagrees on this point and states that the *Wickens* panel "did examine the legislative intent regarding the enactment of MCL 600.2912a(2)." *Post* at 89. As we have done here, the *Wickens* panel identified the issue by acknowledging the two contrasting statutory interpretations argued by the respective parties. However, the *Wickens* panel gives no further treatment to the defendants' position, and we cannot discern from the panel's analysis any basis for rejecting one interpretation in favor of the other. Although the panel engaged in some analysis of case law preceding the enactment of the statute, the analysis fails to clarify why the panel concluded that the plaintiffs' interpretation was the better one. *Wickens, supra*, 242 Mich App 391-392. For these reasons we do not find *Wickens* to be persuasive in resolving the issue before us.

was referring when it stated that "the opportunity" must be greater than fifty percent. "[T]he opportunity" could either refer to the plaintiff's initial opportunity to survive or achieve a better result before the alleged malpractice or could refer to the plaintiff's loss of opportunity to survive or achieve a better result. In order for the language of MCL 600.2912a(2) to plainly indicate that the former interpretation of the statute was intended, the word "initial" must be inferred to modify "opportunity" where the statute refers to the plaintiff's burden of showing that "the opportunity was greater than 50%." However, for the language of the statute to plainly indicate that the latter interpretation of the statute was intended, the words "loss of" must be inferred to modify "opportunity." Because the statute does not contain either of these modifiers or any other words explaining to which "the opportunity" refers, we believe that reasonable minds can differ regarding the meaning of the statute. Because the second sentence of the statute is ambiguous, judicial construction is appropriate. *Adrian School Dist, supra* at 332.

In attempting to determine the legislative intent regarding MCL 600.2912a(2), we first examine the history behind the statute. Our Supreme Court recognized a cause of action to recover for the loss of an opportunity to survive in wrongful death cases in *Falcon v Memorial Hosp*, 436 Mich 443, 469-470 (LEVIN, J., lead opinion), 472-473 (BOYLE, J., concurring); 462 NW2d 44 (1990), superseded by statute as stated in *Weymers v Khera*, 454 Mich 639; 563 NW2d 647 (1997). In *Falcon*, the plaintiff's decedent died from complications shortly after the birth of her child. *Falcon, supra* at 453-454. The plaintiff's expert

witness testified that, absent malpractice on the part of the defendants, the decedent would have had a 37.5 percent chance to survive. *Id.* at 446-447, 454-455. The Supreme Court held that the decedent's loss of this 37.5 percent opportunity was actionable because it constituted a loss of a substantial opportunity of avoiding harm. In doing so, the Court did not focus on the initial opportunity to survive, but focused on whether the decrease in the decedent's opportunity to survive was substantial:

> We are persuaded that *loss of a 37.5 percent opportunity of living* constitutes a loss of a substantial opportunity of avoiding physical harm. We need not now decide what lesser percentage would constitute a substantial *loss of opportunity*. [*Falcon, supra* at 470 (emphasis added).]

The Court determined that the 37.5 percent decrease in the opportunity to survive was substantial enough to allow the plaintiff a cause of action.

Yet "[o]ur Legislature immediately rejected *Falcon*" by enacting MCL 600.2912a(2). *Weymers, supra* at 649.[4] Our interpretation of the statute depends on how we view the Legislature's response to *Falcon* and the parameters it intended to set.

---

[4] Because the cause of action in *Weymers* arose before MCL 600.2912a(2) became effective on October 1, 1993, the Court did not analyze the statute. See 1993 PA 78, subsection 4(1); *Weymers, supra* at 649. In *Weymers* the Supreme Court discussed *Falcon* and other possible approaches to lost opportunity cases. It concluded that all approaches were identical to each other to the extent that each allows a plaintiff to recover for injury even though it was more likely than not that the plaintiff would have suffered the injury if the defendant had not been negligent. *Id.* at 651. See also *Theisen v Knake*, 236 Mich App 249; 599 NW2d 777 (1999), and *Dykes v William Beaumont Hosp*, 246 Mich App 471; 633 NW2d 440 (2001), in which this Court applied the statute.

Considering the Legislature's immediate action in response to *Falcon*, it is reasonable to conclude that MCL 600.2912a(2) was enacted to codify and increase the requirements for what constitutes a "substantial loss of opportunity." In *Falcon*, the decedent's initial opportunity to survive and the decedent's lost opportunity to survive were the same, 37.5 percent, because in that case the result of the defendants' negligence was certain death. In that context, the *Falcon* plaintiff's claim would be barred under either statutory interpretation because her initial opportunity to survive did not exceed fifty percent, nor did she lose a greater than fifty percent chance to survive. In the instant case, however, Fulton's initial opportunity to survive, eighty-five percent, is not the opportunity that she lost. Plaintiffs' expert opined that defendants' alleged negligence caused her to have a sixty to sixty-five percent chance of survival. She suffered a loss of a twenty to twenty-five percent chance of survival.

The rational interpretation is that the Legislature amended the statute as a rejection of the *Falcon* Court's holding that a 37.5 percent loss of an opportunity was substantial, and therefore actionable. The focus in *Falcon* was the 37.5 percent opportunity as it represented the lost opportunity, not as it represented the initial opportunity to survive.[5] *Falcon, supra* at 453, 461, 467, 470. To adopt plaintiff's interpretation,

---

[5] Like the dissent, we recognize that the 37.5 percent lost opportunity in *Falcon* was also the decedent's initial opportunity to survive. However, the *Falcon* Court stated its holding in terms of what was lost: "We are persuaded that loss of a 37.5 percent opportunity of living constitutes a loss of a substantial opportunity of avoiding physical harm. We need not now decide what lesser percentage would constitute a substantial loss of opportunity." *Falcon, supra* at 470. We interpret the Legislature's response as addressing that question.

that the statute requires only that the premalpractice opportunity to survive exceed fifty percent disregards the extent of the loss that was the focus of *Falcon*. To ignore the magnitude of the lost opportunity would be to subvert the Legislature's intent when it amended the statute in response to *Falcon*.[6] Consequently, we conclude that MCL 600.2912a(2) requires a plaintiff to show that the loss of the opportunity to survive or achieve a better result exceeds fifty percent. We believe that this interpretation comports with the language of and the history behind MCL 600.2912a(2).[7]

If we were to adopt plaintiff's interpretation of MCL 600.2912a(2), that a plaintiff is only required to show that the initial opportunity to survive exceeded fifty percent, irrespective of the magnitude of the lost opportunity, a plaintiff would conceivably be able to recover for a loss of an opportunity to survive or achieve a better result when the decedent's initial survival opportunity of eighty-five percent merely decreased to eighty-four percent as a result of a defendant's negligence.[8] The loss of such a small per-

---

[6] We note that by implication, our interpretation of the statute necessarily requires that a plaintiff's initial opportunity to survive exceed fifty percent.

[7] In *Theisen, supra* at 259, n 2, this Court noted: "*Falcon, supra*, found that a loss of opportunity to survive was actionable where the loss of opportunity to survive was 37.5 percent. That holding however was superseded by the 'greater than 50%' language of MCL 600.2912a(2)[.]"

[8] As another example of the application of plaintiff's interpretation of MCL 600.2912a(2), one plaintiff could recover for a loss of an opportunity to survive or achieve a better result when the decedent's initial opportunity to survive was fifty-one percent and decreased to fifty percent as a result of the defendant's malpractice, where another plaintiff could not recover when the decedent's initial opportunity was fifty percent and decreased to zero percent as a result of the defendant's malpractice. We do not believe that the Legislature intended such anomalous results.

centage of an opportunity to survive could hardly be considered a substantial loss of opportunity. Accordingly, such an interpretation of the statute would allow a plaintiff to recover without showing a substantial loss of opportunity to survive or achieve a better result. There is no indication that the Legislature intended to dispense with the substantial loss of opportunity requirement when it enacted MCL 600.2912a(2).

In this case, plaintiff's expert stated that Fulton's initial opportunity to survive was eighty-five percent and that her opportunity to survive after the alleged malpractice was sixty to sixty-five percent. Therefore, because her loss of opportunity due to defendants' alleged malpractice was not greater than fifty percent, we hold that the trial court erred in denying defendants' motion for summary disposition.

Given our resolution of this issue, we need not address defendants' remaining issues on appeal.

Reversed.

WILDER, J., concurred.

SMOLENSKI, J. (*dissenting*). I respectfully dissent because I disagree with the majority's interpretation of MCL 600.2912a(2). I would affirm the trial court's order denying defendants' motion for summary disposition.

This case requires us to interpret the language of MCL 600.2912a(2) and determine what proofs a plaintiff must present in order to state a medical malpractice claim for loss of an opportunity to survive. Plaintiff argues that the statute requires a plaintiff to show (1) the decedent had an initial opportunity to survive, before the alleged malpractice, of at least fifty per-

cent and (2) the alleged malpractice reduced the decedent's opportunity to survive. In contrast, defendants argue that the statute requires a plaintiff to show (1) the decedent had an initial opportunity to survive, before the alleged malpractice, of at least fifty percent, (2) the alleged malpractice reduced the decedent's opportunity to survive by at least fifty percent, and (3) the alleged malpractice more probably than not caused the decedent's death.

The majority adopts defendants' argument, concluding that the statute requires a plaintiff to show a reduction of at least fifty percent in the decedent's opportunity to survive. I disagree. I would conclude that MCL 600.2912a(2) only requires a plaintiff to show that the decedent's initial opportunity to survive was greater than fifty percent and that the alleged malpractice more probably than not reduced that opportunity to survive.

I. MCL 600.2912a(2)

MCL 600.2912a(2) governs the burden of proof requirements with respect to medical malpractice actions. The statute provides:

> In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants. *In an action alleging medical malpractice, the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than 50%.* [Emphasis added.]

In *Wickens v Oakwood Healthcare System*, 465 Mich 53, 60; 631 NW2d 686 (2001), our Supreme Court explained the rules of statutory construction:

> The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001). In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992), mod 440 Mich 1204 (1992).

The majority concludes that MCL 600.2912a(2) is ambiguous because a reasonable person could read the phrase "the opportunity," contained in the second sentence of the statute, to mean either "the plaintiff's initial opportunity to survive or achieve a better result before the alleged malpractice" or "the plaintiff's loss of opportunity to survive or achieve a better result." *Ante* at 80. I agree that the statutory language is ambiguous and that judicial construction is therefore appropriate. However, I disagree with the majority's ultimate construction of the statute.

## II. *WICKENS v OAKWOOD HEALTHCARE SYSTEM*

In *Wickens v Oakwood Healthcare System*, 242 Mich App 385; 619 NW2d 7 (2000), rev'd in part and vacated in part 465 Mich 53; 631 NW2d 686 (2001), this Court addressed the identical legal question

presented in the current case.[1] As the *Wickens* panel stated:

> The question before this Court is whether the statute allows for recovery when the initial opportunity to survive before the alleged malpractice is greater than fifty percent, as argued by plaintiffs, or, rather, if the statute only allows for recovery when the difference between the opportunity to survive before and after the alleged malpractice is greater than fifty percent, as defendants contend. [242 Mich App 390.]

After extensively analyzing the statutory language and the relevant case law, the *Wickens* panel agreed with the plaintiffs' argument, holding that MCL 600.2912a(2) "requires plaintiffs in medical malpractice actions seeking recovery for loss of an opportunity to survive or an opportunity to achieve a better result to show that, had the defendant not been negligent, there was a greater than fifty percent chance of survival or a better result." 242 Mich App 392.

On appeal from that decision, in *Wickens, supra*, 465 Mich 54, our Supreme Court held that "a living person may not recover for loss of an opportunity to survive."[2] The Court reached this conclusion on the basis of the language of the first sentence of the statute, which provides that a medical malpractice plain-

---

[1] The trial court in the present case decided both motions for summary disposition before either appellate court issued an opinion in *Wickens*.

[2] In the present case, plaintiff's claim for loss of an opportunity to survive does not run afoul of our Supreme Court's holding in *Wickens*. Although Fulton was alive when the original complaint was filed, she died during the pendency of the action. Plaintiff amended the complaint after Fulton's death, proceeding with the action as her personal representative. An amended pleading supersedes the former pleading. MCR 2.118(A)(4); *Grzesick v Cepela*, 237 Mich App 554, 562; 603 NW2d 809 (1999). Therefore, plaintiff may properly maintain a claim for loss of an opportunity to survive under MCL 600.2912a(2).

tiff "has the burden of proving that he or she suffered an injury." MCL 600.2912a(2). The Court reasoned that the statute limited a plaintiff's recovery to claims for present injuries, and did not permit claims for potential future injuries. 465 Mich 60. Therefore, the Court limited loss of opportunity to survive claims to situations where death has already occurred. *Id.* at 60-61.

Because the *Wickens* plaintiff was still living, the Court held that her claim was barred, to the extent that it was based on a loss of an opportunity to survive. *Id.* at 61. Further, concluding that "it was unnecessary for the lower courts to have addressed whether plaintiff had a cause of action" based solely on her loss of an opportunity to survive, the Court vacated the portion of this Court's opinion addressing that matter. *Id.* at 62. Given this language in our Supreme Court's opinion, I agree with the majority that this Court's opinion in *Wickens* is not precedentially binding with regard to its construction of the second sentence contained in MCL 600.2912a(2). However, our Supreme Court neither approved nor disapproved of this Court's reasoning on that point. Because I would conclude that this Court's opinion in *Wickens* properly analyzed the language of MCL 600.2912a(2), I would adopt that analysis here.[3]

The majority does not find the *Wickens* panel's reasoning persuasive because that panel "did not acknowledge the ambiguity of MCL 600.2912a(2) or address the legislative intent behind the statute in reaching the conclusion that it did." *Ante* at 79. It is true that the *Wickens* panel did not specifically state

---

[3] See *Wickens, supra,* 242 Mich App 390-394.

whether it found the statutory language to be ambiguous. However, the panel did examine the legislative intent regarding the enactment of MCL 600.2912a(2). In fact, the *Wickens* panel examined the identical sources cited by the majority here: (1) our Supreme Court's opinion in *Falcon v Memorial Hosp*, 436 Mich 443; 462 NW2d 44 (1990), superseded by statute as stated in *Weymers v Khera*, 454 Mich 639; 563 NW2d 647 (1997), (2) the Legislature's subsequent adoption of the statutory language at issue here, and (3) our Supreme Court's opinion in *Weymers*.[4] See *Wickens, supra*, 242 Mich App 390-392. Examining those sources, the *Wickens* panel simply came to a different conclusion than the majority here.

The majority focuses on the "magnitude of the lost opportunity," *ante* at 83, as the touchstone for understanding the language of MCL 600.2912a(2) as a legislative response to our Supreme Court's decision in *Falcon*. This approach is driven by the majority's view that the "focus in *Falcon* was the 37.5 percent opportunity as it represented the lost opportunity, not as it represented the initial opportunity to survive." *Ante* at 82. However, the 37.5 percent opportunity in *Falcon* represented *both* the initial opportunity to survive *and* the reduction in the opportunity to survive. See *Falcon, supra* at 447-449.

I believe that *Falcon's* true focus was whether a plaintiff with less than a fifty percent initial opportunity to survive could prove that the defendants caused the plaintiff physical harm, under the traditional "more probable than not" standard of causa-

---

[4] Because the *Wickens* panel looked beyond the statutory language itself, the decision implies a finding that the second sentence of MCL 600.2912a(2) is ambiguous.

tion.[5] To resolve that question, the *Falcon* Court examined three alternative approaches to the lost opportunity doctrine: (1) the pure lost chance approach, (2) the proportional approach, and (3) the substantial possibility approach. *Weymers, supra* at 650; *Wickens, supra,* 242 Mich App 391. The *Weymers* Court in discussing *Falcon,* further explained that "[e]ach approach lowers the standard of causation, with the effect that a plaintiff is allowed to recover without establishing cause in fact." *Weymers, supra* at 650. The substantial possibility approach, adopted by the *Falcon* Court, "allows a plaintiff to recover for his injury even though it was more likely than not that he would have suffered the injury if the defendant had not been negligent." *Weymers, supra* at 651.

The Legislature adopted MCL 600.2912a(2) in response to *Falcon.* However, the statute does not prohibit medical malpractice plaintiffs from bringing claims for loss of an opportunity to survive. Rather, the statute expressly recognizes such claims, with an important restriction: a plaintiff cannot recover for loss of an opportunity to survive unless the plaintiff proves, under a more probable than not standard, that the plaintiff would not have suffered the injury in the absence of the defendant's negligence. MCL 600.2912a(2). As explained by the *Wickens* panel:

> By requiring plaintiffs in a malpractice claim to prove that "the opportunity was greater than 50%" before recovering for loss of an opportunity to survive, MCL 600.2912a(2); MSA 27A.2912(1)(2), the Legislature rejected the lost opportunity doctrine that allowed a plaintiff to recover even though it was more probable than not that the plaintiff

---

[5] See *Falcon, supra* at 449-451.

would not have survived even if there had been no negligence. See *Weymers, supra* at 649, 651. Therefore, we agree with plaintiffs that MCL 600.2912a(2); MSA 27A.2912(1)(2), requires plaintiffs in medical malpractice actions seeking recovery for loss of an opportunity to survive or an opportunity to achieve a better result to show that, had the defendant not been negligent, there was a greater than fifty percent chance of survival or a better result. [*Wickens, supra*, 242 Mich App 391-392.]

I find the construction of the statute articulated by this Court in *Wickens* superior to the construction advanced by the majority here.

### III. APPLICATION

As an initial matter, I would reject defendants' argument that plaintiff was required to show that defendants' alleged malpractice more probably than not caused Fulton's death.[6] Defendants' argument misapprehends the nature of plaintiff's claim. It is true that a living person may not recover for the loss of an opportunity to survive. *Wickens, supra*, 465 Mich 54. However, that does not mean that the *injury* that a loss of opportunity to survive claim is designed to compensate is the person's *death*. Rather, the injury is the loss of an opportunity to survive. As our Supreme Court stated in *Falcon, supra* at 461, "[w]e thus see the injury resulting from medical malpractice as not only, or necessarily, physical harm, but also as including the loss of opportunity of avoiding physical harm."[7] Therefore, I would conclude that plaintiff was

---

[6] The majority opinion does not address this portion of defendants' argument.

[7] As further explained by our Supreme Court in *Weymers, supra* at 653, a cause of action does not exist for the loss of an opportunity to avoid

not required to prove that defendants' alleged malpractice more probably than not caused Fulton's death.

Defendants also argue that plaintiff's expert witness testimony failed to raise a genuine issue of material fact regarding causation, sufficient to satisfy MCL 600.2912a(2). I disagree. At his deposition, Dr. Taylor opined that, in February 1995, Fulton was suffering from early invasive cervical cancer. Dr. Taylor testified that the survival rate for early invasive cervical cancer patients in February 1995 was eighty-five percent. Dr. Taylor further testified that Fulton's survival rate would not have changed significantly between February and June 1995, the earliest date when Fulton could have undergone surgery. Given Fulton's December 1995 diagnosis of stage IIB cervical cancer, Dr. Taylor testified that her survival rate had dropped to sixty or sixty-five percent because of the ten-month delay in diagnosis and the seven-month delay in treatment.

Dr. Taylor conceded that he could not state, within a reasonable degree of medical certainty, the exact date on which Fulton's cancer progressed to stage IIB. Further, he could not definitively rule out the possibility that Fulton's cancer had already progressed to that stage in February or June 1995. However, he did testify that it was impossible to know the exact progression of Fulton's disease only because of defendants' failure to diagnose it and their resultant failure to perform the appropriate tests. Dr. Taylor did opine, on the basis of Dr. Eldridge's clinical observations, that Fulton's cancer was probably in its early stages

---

physical harm less than death, but only for the loss of an opportunity to avoid death.

in February 1995. Dr. Taylor also repeatedly opined that an earlier diagnosis of Fulton's cancer would have led to an increased chance of survival.

Therefore, plaintiff presented expert testimony that Fulton's opportunity to survive, before defendants' alleged malpractice, exceeded fifty percent. Plaintiff also presented expert testimony that defendants' alleged malpractice decreased Fulton's opportunity to survive by approximately twenty to twenty-five percent. Given this testimony, I would conclude that plaintiff provided sufficient evidence to state a claim for loss of an opportunity to survive, under MCL 600.2912a(2).

I find no merit in defendants' argument that Dr. Taylor's affidavit contradicts his deposition testimony and that the trial court therefore erroneously denied their motion for summary disposition. Defendants contend that Dr. Taylor's opinion that Fulton had an eighty-five percent chance of survival before defendants' alleged malpractice appears only in his affidavit and that Dr. Taylor never testified at his deposition that Fulton would have had a better than fifty percent opportunity to survive if her cervical cancer had been timely and properly diagnosed. Contending that Dr. Taylor's affidavit squarely contradicts his deposition testimony, defendants argue that the trial court was required to grant defendants' motion for summary disposition under *Dykes v William Beaumont Hosp*, 246 Mich App 471; 633 NW2d 440 (2001). I disagree.

In *Dykes*, the plaintiff's medical malpractice claim was premised on the theory that the decedent more probably than not would have survived absent the defendant's alleged malpractice. *Id.* at 477. The plaintiff's sole expert witness stated in an affidavit that the decedent would have enjoyed more than a fifty per-

cent chance of survival if the defendant had followed the appropriate standard of care. *Id.* Therefore, the expert's affidavit concluded that the defendant's violation of the standard of care proximately caused the decedent's damages. *Id.* However, at his deposition, the expert could not offer an opinion regarding the decedent's life expectancy had the recommended treatment been given. Further, the expert acknowledged that it was impossible to state whether the recommended treatment would have made a difference in the outcome or prolonged the decedent's life. *Id.* at 479.

On appeal, this Court concluded that a party could not create a genuine issue of material fact " 'by relying on an affidavit when unfavorable deposition testimony shows that the assertion in the affidavit is unfounded.' " *Id.* at 481, quoting *Kaufman & Payton, PC v Nikkila,* 200 Mich App 250, 257; 503 NW2d 728 (1993). Because the deposition testimony of the plaintiff's expert witness directly contradicted his affidavit regarding the issue of causation, this Court concluded that the requisite causal link between the defendant's conduct and the decedent's life expectancy had not been established and that the trial court properly granted summary disposition. *Dkyes, supra* at 478-479.

In the present case, the trial court expressly found that Dr. Taylor's affidavit did not contradict his deposition testimony. My reading of the record convinces me that the trial court was correct on this point. In both his deposition testimony and his affidavit, Dr. Taylor opined that (1) Fulton's opportunity to survive the cancer, before defendants' alleged malpractice, was approximately eighty-five percent, (2) Fulton's opportunity to survive the cancer, when it

was finally diagnosed, was approximately sixty to sixty-five percent, and (3) defendants' failure to timely and properly diagnose Fulton's cancer caused Fulton a loss of approximately twenty to twenty-five percent chance of survival. Viewing the affidavits, depositions, and documentary evidence in the light most favorable to plaintiff, I would conclude that Dr. Taylor's deposition testimony was consistent with his affidavit. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). Thus, defendants' argument on this point is without merit.

Finally, defendants argue that Dr. Taylor's testimony regarding survival rates in cervical cancer cases did not apply to Fulton's individual chances of survival. As defendants argue: "these statistics do not apply to Mrs. Fulton, whose cancer proved to be incurable." Again, defendants' argument is without merit. The fact that Fulton failed to survive the cervical cancer does not mean that the survival statistics set forth by Dr. Taylor did not apply to her. Rather, Fulton's death is consistent with a finding that she fell within that group of thirty-five to forty percent of cervical cancer patients who will not survive after a diagnosis of stage IIB cancer. Fulton's death does not change the expert witness testimony submitted by plaintiff that defendants' alleged malpractice reduced Fulton's chance of surviving the cervical cancer from eighty-five percent to sixty or sixty-five percent.[8]

---

[8] Furthermore, defendants' arguments are internally inconsistent. On the one hand, defendants argue that, in order to bring a claim for loss of an opportunity to survive, a plaintiff must demonstrate that the defendants' alleged malpractice more probably than not caused the patient's death. On the other hand, defendants argue that general statistics regarding survival rates cannot apply to patients who die. Our Supreme Court has clearly held that a patient must have died before a valid claim for loss of an opportunity to survive can be stated. Defendants' argument, if

I would affirm the trial court's order denying defendants' motion for summary disposition.

---

accepted, would preclude all plaintiffs bringing this type of claim from presenting evidence that a particular patient had a greater than fifty percent chance of survival. By extension, defendants' argument would preclude all claims for loss of an opportunity to survive. I cannot conclude that such an argument is viable in light of MCL 600.2912a(2), which expressly permits plaintiffs in medical malpractice actions to bring claims for loss of an opportunity to survive where the opportunity was greater than fifty percent.