CAVANAGH, J.
(concurring). I concur in the result. I agree with the majority that the Court of Appeals’ judgment in this case should be reversed because the Court erred by treating this case as a loss-of-opportunity case instead of a traditional medical malpractice case and, as a result, erred by requiring plaintiff to meet the requirements in the second sentence of MCL 600.2912a(2). I further agree that Fulton v William Beaumont Hosp, 253 Mich App 70; 655 NW2d 569 (2002), should be overruled to the extent that courts have relied on it to improperly transform what could be traditional medical malpractice claims into loss-of- *508 opportunity claims.[1] I write separately to express my views on the issues presented.
This case raises the issue of what the proper burden of proof for proximate causation is in medical malpractice cases in which the plaintiff had a preexisting risk of the bad result that occurred, even absent the defendant’s alleged negligence. I agree with the lead opinion that the second sentence of MCL 600.2912a(2) is inapplicable to this case because it only applies to loss-of-opportunity claims and this case does not involve a loss-of-opportunity claim. Instead, the key issue in this case is the proper interpretation of the first sentence of MCL 600.2912a(2).
The first sentence of MCL 600.2912a(2) clearly provides that a plaintiff in any medical malpractice case, including a traditional medical malpractice case, bears the burden of showing that it is more probable than not that the plaintiffs injury was proximately caused by the defendant’s negligence. Under traditional malpractice law in Michigan, proximate cause includes two prongs: (1) cause in fact and (2) legal, or “proximate,” cause.[2] See, e.g., Skinner v Square D Co, 445 Mich 153, 162-163; 516 NW2d 475 (1994). While legal causation relates to the foreseeability of the consequences of the defendant’s conduct, the cause-in-fact prong “generally requires showing that ‘but for’ the defendant’s actions, the plaintiffs injury would not have occurred.” Id. at 163. The cause-in-fact prong is sometimes also stated as *509 requiring that “it is more likely than not that the conduct of the defendant was a cause in fact of the result.” Weymers v Khera, 454 Mich 639, 648; 563 NW2d 647 (1997) (quotation marks and citations omitted). Thus, even in cases in which there is statistical evidence that the plaintiff had a risk of the bad result occurring absent negligence,[3] a plaintiff may still meet the cause-in-fact prong of the proximate causation analysis if the plaintiff can show that it is more probable than not that the defendant’s alleged negligence was a cause in fact of the bad result occurring. I would hold that this threshold is met if the plaintiff can show that the alleged negligence was responsible for a majority, or “more than fifty percent,” of the risk of the bad result occurring. See MCL 600.2912a(2) and Falcon v Mem Hosp, 436 Mich 443, 450; 462 NW2d 44 (1990).[4]
Under this approach, a court should consider the total risk of the bad result that the plaintiff faced, including the risk caused by the alleged negligence. Then, the court should consider how much of that risk was created by the negligence. If the negligence was responsible for more than half of the total risk of the bad result and the plaintiff suffered that bad result, then the cause-in-fact prong of the proximate cause analysis is met because it is more probable than not that the defendant’s negligence was a cause in fact of the bad result.[5] This approach is consis *510 tent with the statutory language “more probable than not” and with the historical approach to proximate causation.[6]
*511 In adopting this approach, I reject the view that a plaintiff must show that the defendant’s negligence increased the plaintiffs risk by more than 50 percentage points, e.g., from 25 percent to 76 percent, or from 10 percent to 61 percent.[7] As noted by the lead opinion, this approach is inconsistent with the historical approach to proximate causation. It is also inconsistent with the first sentence in MCL 600.2912a(2) because it would preclude traditional medical malpractice claims in many cases in which the defendant’s negligence was more probably than not a cause in fact of the bad result, such as in a case in which the negligence increased the risk of a bad result from 5 percent to 45 percent.[8] I also reject the lead opinion’s “percent-increase” test because it is similarly inconsistent with a more-probable-than-not standard. The fact that a negligent act caused a 50 percent increase in the risk of a bad result does not demonstrate that it is more probable than not that the negligence was a cause in fact of the bad result.[9]
*512 In this case, plaintiff presented sufficient facts to establish the cause-in-fact prong of the proximate cause analysis in a traditional medical malpractice claim. Viewing the facts in the light most favorable to plaintiff, plaintiffs expert testified that defendants’ alleged negligence increased plaintiffs risk of the bad result, the stroke, from 5 percent to 20 percent. Defendants were thus responsible for 15 percentage points out of the total 20 percentage points of plaintiffs risk of the bad result, meaning that there is a 15/ao chance, or 75 percent chance, that defendants’ alleged negligence was a cause in fact of the bad result.[10] Thus, plaintiff has presented evidence sufficient to support his allegation that it is “more probable than not” that defendants’ negligence was a cause in fact of the stroke occurring.
For the foregoing reasons, I concur with the lead opinion that the judgment of the Court of Appeals *513 should be reversed. I would remand the case to the Court of Appeals for further proceedings.
KELLY, C.J., concurred with CAVANAGH, J.

 Contrary to Justice Young’s assertion, I overrule Fulton only to the extent that it is implicated in this case. Regardless, I am sincerely baffled about what relevance Chief Justice Kelly’s views on a former composition of this Court have to do with whether we should overrule a Court of Appeals case.

 Because the statute incorporates words and phrases from the common law, it is appropriate to consider common-law meanings of these phrases. See People v Wright, 432 Mich 84, 92; 437 NW2d 603 (1989).

 I agree with, the lead opinion, however, that not all traditional medical malpractice cases need to be expressed in statistical or percentage terms in order to meet the “more probable than not” standard.

 If a plaintiff cannot meet the burden for a traditional medical malpractice claim, I would hold that the plaintiff may still pursue a loss-of-opportunity claim if the plaintiff can meet the requirements for those claims provided in MCL 600.2912a(2) and Falcon, as explained in my opinion in Stone v Williamson, 482 Mich 144, 170-179; 753 NW2d 106 (2008).

 To give a nonmedical example, if I am rolling a die, there is ordinarily a 1 out of 6 chance that I will roll a number one. But if a defendant *510 negligently changes two additional sides of the die to number ones, then the die will have three number ones. Now my chances of rolling a number one are 3 out of 6 (or lli). If I actually roll a number one, there is a 2/s (approximately 67 percent) chance that I rolled a number one that was created by the defendant’s negligence. Therefore, there is a more than 50 percent chance that I rolled a number one because of the defendant’s negligence, i.e., it is more probable than not that the defendant’s negligence was a cause in fact of the result. Notably, this analysis will differ somewhat if the plaintiffs increased risk of the bad result is alleged to have been caused by multiple negligent actors, depending on the timing and the interaction of the various causes.

 Justice Young haphazardly concludes that “the majority” is extending the exception to the cause-in-fact prong created in Falcon to all medical malpractice claims. I agree that Falcon created what was essentially an exception to this rule, but I fail to see, and Justice Young utterly fails to explain, how my approach in this case is an extension of that rule to all traditional medical malpractice cases. Justice Young himself explains that “[i]n cases in which the plaintiff alleges that the defendant’s negligence more probably than not caused the injury, the claim is one of simple medical malpractice [as opposed to Ioss-of-opportunity].” (Quotation marks and citation omitted.)
Setting aside the numerous pages of Justice Young’s opinion that consist only of irrelevant, hyperbolic, or unsubstantiated commentary, he appears to raise only two substantive concerns with my approach, and neither provides support for his conclusion that it does not satisfy the cause-in-fact prong. First, he irrelevantly notes that, as I concede in footnote 7, this approach is inconsistent with an example I used in Stone. Second, he alleges that I should not have compared the low end of the possible range of plaintiffs risk of the bad result absent negligence to the high end of the range of plaintiffs risk with negligence. I think that my approach is perfectly consistent with our charge to view the evidence in the light most favorable to the plaintiff, given that even Justice Young explains that the experts testified that plaintiffs risk was somewhere between the ranges the experts provided. But regardless, this criticism only challenges which numbers to use and not the merits of the approach itself, and it would be possible, as Justice Young prefers, to instead compare the low ends of the ranges, or the high ends, only to each other. For example, if the alleged negligence increased a plaintiffs risk of the bad result from 5 to 10 percent to 30 to 40 percent, then, regardless of which numbers are compared, the negligence would have been responsible for a majority of the plaintiffs risk of the bad result, and, given *511 that the bad result occurred, it would be more probable than not that the negligence was a cause in fact of the bad result occurring. Justice Young fails to address why this logic is incorrect or levy a criticism that actually supports his conclusion that my approach eviscerates the cause-in-fact requirement.

 To the extent that I endorsed the percentage point approach by way of an example in my opinion in Stone, I repudiate that position. See Stone, 482 Mich at 177 (opinion by Cavanagh, J.), stating that a plaintiff whose chance of survival decreased from 80 to 40 percent could not bring a traditional malpractice claim because it would not amount to a 50 percent change.

 In this example, the defendant was responsible for 40 percentage points of the plaintiffs risk, out of a total of 45 percentage points, meaning that there is a 40 out of 45 chance, or 4%5 (approximately 89 percent) chance, that the defendant’s negligence was a cause in fact of the bad outcome. In contrast, under the percentage-point approach, the plaintiffs burden would not have been met because the increase in risk was 40 percentage points.

 For example, if a defendant’s negligence caused an increase in a plaintiffs risk of a bad result from 10 percent to 15 percent, this would *512 be a 50 percent increase in risk. But it is not more probable than not that the defendant’s negligence was a cause in fact because the defendant would only have been responsible for five out of the total 15 percentage points of the plaintiffs risk of the bad result, meaning that there is only a 5/15 chance, or an approximately 33 percent chance, that the negligence was a cause in fact of the bad result. As I explain in footnote 4, however, the plaintiff could still pursue a loss-of-opportunity claim.

 Although this formulation is mathematically identical to Justice Markman’s approach, there are very important differences in how we view its utility. I favor adopting it because it is consistent with the more-probable-than-not standard in the first sentence of MCL 600.2912a(2) as applied to traditional medical malpractice claims in which the plaintiff had a risk of the bad result even absent negligence. In contrast, Justice Makkman believes it is required by the second sentence of MCL 600.2912a(2) and, unlike myself, believes that all medical malpractice claims in which there was a risk of the bad result occurring even absent negligence should be treated as loss-of-opportunity claims, regardless of whether the plaintiff can meet the burden of proof for a traditional medical malpractice claim. As explained in my concurring opinion in Stone, I continue to think that Justice Markman’s interpretation is inconsistent with the statute’s text and Michigan law, including Falcon. Stone, 482 Mich at 179-184 (opinion by Cavanagh, J.).