*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF WANDA JESSE, by BEVERLY
JUNE GRAY, Personal Representative,

Plaintiff-Appellant,

v

LAKELAND SPECIALTY HOSPITAL AT
BERRIEN CENTER,

Defendant-Appellee.

FOR PUBLICATION
May 14, 2019
9:00 a.m.

No. 341805
Berrien Circuit Court
LC No. 17-000215-NM

Before: METER, P.J., and FORT HOOD and Borrello, JJ.

METER, J.

Under MCL 600.5852's saving provision, when the statute of limitations for a medical malpractice claim has otherwise lapsed, the personal representative of an estate is given two years "from the date letters of authority are issued to" her to bring a claim on behalf of the estate. In this case, we are called upon to determine when the letters of authority are "issued." Reviving the precedent temporarily set by *Lentini v Urbancic*, 262 Mich App 552, 555-559; 686 NW2d 510 (2004), vacated and remanded on other grounds 472 Mich 885 (2005), we conclude that the letters of authority are "issued" on the date they are signed by the probate judge. Because plaintiff did not file the action within two years of the date the probate judge signed the letters of authority, we affirm the trial court's dismissal of the action as untimely. MCR 2.116(C)(7).

## I. BACKGROUND

The facts underlying this dispute are not contested. Plaintiff's decedent, Wanda Jesse, died on September 15, 2013, allegedly due to defendant's malpractice. Under MCL 600.5805(8), the statute of limitations for decedent's medical malpractice claim would have expired on September 15, 2015, absent application of the savings provision set forth in MCL 600.5852. The probate judge signed the letters of authority establishing decedent's estate on September 9, 2015, but the letters were not mailed to the personal representative of the estate, Beverly June Gray, until September 25, 2015. Plaintiff filed the instant complaint for medical malpractice on September 22, 2017.

Defendant moved for summary disposition under MCR 2.116(C)(7), arguing that, under MCL 600.5852(2), the statutory period of limitations had ended on September 9, 2017—two years from the date the probate court signed the letters of authority. Plaintiff disagreed, arguing that the statutory period did not end until September 25, 2017—two years from the date the probate court mailed the letters of authority. The trial court agreed with defendant that the statutory period ended on September 9, 2017, and granted defendant's motion for summary disposition. This appeal followed.

## II. ANALYSIS

The only issue presented to us in this appeal is a legal one: does the statutory period set forth in MCL 600.5852's saving provision begin to run on the date the letters of authority are signed or the date they are mailed or otherwise distributed to the personal representative. MCR 2.116(C)(7) directs the trial court to grant summary disposition to a party when there is no question of material fact that the claim is barred because it was not brought within the relevant statutory period. "We review de novo a trial court's grant or denial of summary disposition." *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). MCL 600.5852 provides, in pertinent part:

> (1) If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action that survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run.

> (2) If the action that survives by law is an action alleging medical malpractice, the 2-year period under subsection (1) runs from the date letters of authority are issued to the first personal representative of an estate. Except as provided in subsection (3), the issuance of subsequent letters of authority does not enlarge the time within which the action may be commenced.

> (3) If a personal representative dies or is adjudged by a court to be legally incapacitated within 2 years after his or her letters are issued, the successor personal representative may commence an action alleging medical malpractice that survives by law within 1 year after the personal representative died or was adjudged by a court to be legally incapacitated.

There is no binding caselaw interpreting the term "issued" in the context of MCL 600.5852. Yet, this is not the first time that this question has been presented to this Court. Rather, we answered the question whether "issued" denotes the signature date or some later date in *Lentini v Urbancic*, 262 Mich App 552, 555-559; 686 NW2d 510 (2004) (*Lentini I*). The *Lentini I* panel concluded that the letters of authority are "issued" on the date the probate judge signs them, reasoning as follows:

> The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003). If reasonable minds can differ

-2-

regarding the meaning of a statute, judicial construction is appropriate. *Adrian School Dist v Michigan Pub School Employees Retirement Sys*, 458 Mich 326, 332; 582 NW2d 767 (1998). The court must consider the object of the statute and the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994).

We hold that the trial court correctly decided that the letters of authority are "issued" on the date they are signed by the probate judge and not on the date they are certified or the date they are mailed to the fiduciary. For the purpose of a statute of limitations savings provision to be served, there must be a date certain, objectively verifiable, from which interested parties can calculate the various tolling and limitations periods. The merit of defendants' position and the trial court's ruling is that the date the letters of authority are signed by the trial court is an objectively verifiable, certain, and unchanging date. The signature date is the date by which deadlines for the expiration of the letters of authority and the due dates for the estate's inventory and annual account are set. Moreover, the probate court's "Case Summary" of a decedent's estate, which exists to provide a list of all the significant activity on a particular file, lists the signature date as the date that the personal representative of the estate was appointed on the basis of the letters of authority. And it is the date the fiduciary receives his authority to act on behalf of the estate. MCL 700.3103 states, "The issuance of letters commences an estate's administration." The signature date is also indicated on each and every certified copy and on the original letters of authority.

By holding that the signature date is the issuance date of the letters of authority, the trial court interpreted MCL 600.5852 in a way that served the purpose of the statute in that it provided an objectively verifiable, easily ascertainable date from which to calculate the running of limitations and limitations savings provisions. This interpretation also advances one of the purposes of the Estates and Protected Individuals Code, MCL 700.1101 *et seq.*, "To promote a speedy and efficient system for liquidating a decedent's estate...." MCL 700.1201(c).

Furthermore, we believe this interpretation is supported by our Supreme Court's recent decision in [*Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 33; 658 NW2d 139 (2003)], which held that MCL 600.5852 allows *any* personal representative, not just the initial personal representative, to commence an action within two years after letters of authority are issued. Because a personal representative may not commence an action until he has authority to do so and he receives this authority on the date the probate judge signs letters of authority, it follows that the statutory period of limitations and any savings provisions should begin to run from the date the personal representative has authority to commence an action.

We find defendant Urbancic's reference to MCR 2.602 and his comparison of the certified copy of the letters of authority to a true copy of an

order of the circuit court to be apt. MCR 2.602(A)(2) provides that the date of the signing of an order or judgment is the date of entry of that order or judgment. By analogy, the date the letters of authority are signed is the date that they are issued. And it is the date that a circuit court order is signed that is used to refer to the order. The date that a true copy of an order is obtained by an interested party is not legally or procedurally significant. So it should be with the letters of authority.

The date letters of authority are certified is unworkable as the date of issuance because the certification date simply reflects the date that an interested party requests and obtains certified copies of the letters of authority. One could get a certified copy every day of the month, providing no date certain from which to calculate the statute of limitations and other deadlines. Further, the certification date is not verifiable absent the actual certified copy of the letters of authority. Unlike the date of the judge's signature, which is recorded in the court file and which remains on the original letters of authority contained in the court file, there is no record of the date that copies of the letters of authority are certified. Therefore, if the recipient of a certified copy of the letters of authority were to misplace his copy, there would be no means to determine the date of the certification and no way to calculate, with certainty, the date the statutory period of limitations expires. Clearly, the goal of ease and speed of application of statute of limitations provisions requires that the date of issuance of letters of authority be the date that they are signed by the court. For this reason, plaintiff's assertion that the issuance date should be determined by considering the factual circumstances of each case is also unworkable. [*Lentini I*, 262 Mich App at 555-558 (internal footnote omitted).]

*Lentini I* was subsequently vacated by our Supreme Court on other grounds. *Lentini v Urbancic*; 472 Mich 885; 695 NW2d 66 (2005) (*Lentini II*). On remand, we left open the issue of when the letters of authority were "issued." See *Lentini v Urbancic (On Remand)*, 267 Mich App 579, 582; 705 NW2d 701 (2005). Thus, *Lentini I* has no precedential value.[1]

Nonetheless, we believe that *Lentini I* was rightly decided and, in lieu of restating what has been so thoughtfully considered by the prior panel, we adopt *Lentini I*'s interpretation of the term "issued" in MCL 600.5852. Accordingly, we conclude that the statutory period concluded on September 9, 2017, meaning plaintiff's September 22, 2017, complaint was untimely.

---

[1] We disagree with defendant that *Lentini I* remains good law. "A Court of Appeals opinion that has been vacated by the majority of the Supreme Court without an expression of approval or disapproval of this Court's reasoning is not precedentially binding." *People v Atkins*, 259 Mich App 545, 550 n 8; 675 NW2d 863 (2003), citing *Fulton v William Beaumont Hosp*, 253 Mich App 70, 79; 655 NW2d 569 (2002). Our Supreme Court's order in *Lentini II* vacated *Lentini I* in its entirety, without expressing any opinion on this Court's interpretation of the term "issued." *Lentini II*, 472 Mich 885. Therefore, *Lentini I* has no relevant precedential value.

Plaintiff does not disagree with *Lentini I*. In fact, plaintiff argues that *Lentini I* "makes sense." Nonetheless, plaintiff points out that *Lentini I* interpreted subsection (1) of MCL 600.5852, whereas the relevant statutory section for plaintiff's complaint is MCL 600.5852(2). We believe that this distinction is irrelevant. "It is reasonable to conclude that words used in one place in a statute have the same meaning in every other place in the statute." *Little Caesar Enterprises v Dep't of Treasury*, 226 Mich App 624, 630; 575 NW2d 562 (1997). Indeed, in this statute, there is clear evidence that the Legislature intended the term "issued" to have a consistent meaning. Subsection (2) does not set forth a statutory period independent from subsection (1). Rather, subsection (2) states that "the 2-year period *under subsection (1)* runs from the date letters of authority are issued to the first personal representative of an estate." MCL 600.5852(2) (emphasis added). Where subsection (2) directly references subsection (1) and its use of the term "issued," it would be illogical for this Court to interpret the term differently for each subsection.

## III. CONCLUSION

Although there is no binding precedent interpreting MCL 600.5852's use of the term "issued," this case does not pose an issue of first impression in the literal sense. Reviving *Lentini I*'s interpretation of the term, we conclude that letters of authority establishing an estate are "issued" on the date they are signed by the probate judge. Because plaintiff did not file the complaint within two years of the date the probate judge signed the letters of authority, the trial court properly dismissed the action as untimely. MCL 600.5852(2). Accordingly, we affirm the trial court's grant of summary disposition to defendant under MCR 2.116(C)(7).

/s/ Patrick M. Meter
/s/ Karen M. Fort Hood
/s/ Stephen L. Borrello

-5-