MARKMAN, J.
{concurring in the result only). Unlike the majority, I conclude that this is a lost-opportunity case because it is possible that the bad outcome here, i.e., suffering a stroke, would have occurred even if plaintiff had received proper treatment. However, I concur in the result reached by the majority because plaintiff has raised a genuine issue of material fact regarding whether he suffered a greater than 50 percent loss of an opportunity under MCL 600.2912a. Therefore, I agree with the majority that the judgment of the Court of Appeals should be reversed and this case should be remanded to the Court of Appeals for it to consider defendants’ remaining issue on appeal, i.e., the admissibility of the expert testimony proffered by plaintiff. However, I strongly disagree with the analysis of the majority and believe that it will lead to confusion and unnecessary litigation.
I. STATUTE AND CASELAW
MCL 600.2912a(2) provides:
*516 In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants. In an action alleging medical malpractice, the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than 50%.[1]
In Fulton v William Beaumont Hosp, 253 Mich. App 70; 655 NW2d 569 (2002), the Court of Appeals held that a lost-opportunity plaintiff must prove that his loss was greater than 50 percentage points. That is, the difference between the plaintiffs premalpractice chance to achieve a better result and the plaintiffs postmalpractice chance to achieve a better result must be greater than 50 percentage points. [2]
In Stone v Williamson, 482 Mich 144; 753 NW2d 106 (2008), although all seven justices concluded that Fulton was wrongly decided, this Court could not overrule Fulton because, while four justices concluded that Fulton was a lost-opportunity case, six justices concluded that Stone was not a lost-opportunity case. See id. at 164 n 14 (opinion by TAYLOR, C.J.) (“[BJecause a majority of justices hold that this is not a lost-opportunity case, the issue of the correctness of Fulton cannot be reached, and Fulton’s approach remains undisturbed as the method of analyzing lost-opportunity cases.”).[3] In *517 Stone, Chief Justice TAYLOR and Justices CORRIGAN and YOUNG concluded that the loss-of-an-opportunity provision is “unenforceable.” Id. at 147 (opinion by Taylor, C.J.). They concluded that if the plaintiff’s premalpractice opportunity to achieve a better result was greater than 50 percent, the plaintiff could bring a traditional medical-malpractice action. However, if the plaintiff’s premalpractice opportunity to achieve a better result was 50 percent or less, the plaintiff could not bring a traditional medical-malpractice action or a lost-opportunity action because lost-opportunity actions are no longer allowed under the language of the statute.
Justices CAVANAGH, KELLY, and WEAVER concluded in Stone that if the percentage point difference between the plaintiff’s premalpractice opportunity to achieve a better result and his postmalpractice opportunity to achieve a better result was greater than 50 percentage points, the plaintiff could bring a traditional medical-malpractice action. However, if the percentage point difference was 50 points or less, the plaintiff could only bring a lost-opportunity action and would have to prove that his premalpractice opportunity to achieve a better result was greater than 50 percent.
Finally, in Stone, I concluded that a lost-opportunity case is “one in which it is at least possible that the bad outcome would have occurred even if the patient had received proper treatment.” Id. at 186 (opinion by *518 MARKMAN, J.).[4] I further concluded that in order for a lost-opportunity plaintiff to prevail, he must prove that his lost opportunity was greater than 50 percent. And,
[i]n order to determine whether the “lost opportunity” was greater than 50 percent, the postmalpractice chance of obtaining a better result must be subtracted from the premalpractice chance, the postmalpractice chance must then be subtracted from 100, the former number must be divided by the latter number, and then this quotient must be multiplied by 100 to obtain a percentage. [Id.]
“If this percentage is greater than 50, the plaintiff may be able to prevail; if this percentage is 50 or less, then the plaintiff cannot prevail.” Id.
II. PROBLEMS WITH FULTON
As I observed in Stone, the first problem with Fulton is that it requires a loss of more than 50 percentage points, while MCL 600.2912a(2) requires a loss of more than 50 percent.
The Court of Appeals in Fulton . .. concluded that because the plaintiffs premalpractice chance of survival was 85 percent and her postmalpractice chance of survival was 60 percent to 65 percent, her “lost opportunity” was 20 percent to 25 percent and, thus, because the plaintiffs “lost opportunity” was not greater than 50 percent, she could not recover under MCL 600.2912a(2). However, Fulton did not offer any explanation as to why it merely subtracted the postmalpractice chance from the premalpractice chance to determine the “lost opportunity.” This might have been the correct method of determining the “lost opportunity” if MCL 600.2912a(2) required that such a loss be “greater than 50 percentage points.” However, *519 MCL 600.2912a(2) requires that the “lost opportunity” be “greater than 50%.” There is a significant distinction between 50 percentage points and 50 percent. As Dr. Roy Waddell, a board-certified orthopedic surgeon in Grand Rapids, has explained: “A decrease in survival rate from 50 percent to 10 percent is a 40-percentage-point decrease, but it is an 80 percent decrease.” Waddell, A doctor’s view of “opportunity to survive’’: Fulton’s assumptions and math are wrong, 86 Mich B J 32, 33 (March 2007) (emphasis in original). Similarly, a reduction in wages from $5 an hour to $1 an hour is not a 4 percent reduction in wages; rather, it is an 80 percent reduction in wages. [Id. at 196 (emphasis in the original).]
As I also observed in my opinion in Stone, Justice CAVANAGH made this same mistake in his opinion in Stone:
Like the Court of Appeals in Fulton, Justice CAVANAGH offers no explanation as to why he repeatedly calculates the “lost opportunity” in terms of the percentage points lost rather than the actual percentage lost when MCL 600.2912a(2) clearly states that the “lost opportunity” must be “greater than 50%,” not greater than 50 percentage points. These statistical concepts are utterly distinct. [Id. at 196 n 11.]
I am pleased that Justice CAVANAGH and the other justices who signed his opinion in Stone (Chief Justice KELLY and Justice WEAVER) now apparently recognize this analytical error, and that they now “repudiate” that position. Thus, a majority of the justices of this Court now agree that MCL 600.2912a(2) requires us to determine whether the lost opportunity is “greater than 50%, ” not whether the lost opportunity is greater than 50 percentage points.
The other problem with Fulton, which Justice CAVANAGH and his colleagues in the majority also now apparently recognize, is that “it does not differentiate *520 between those patients who would have survived regardless of whether they received proper or improper treatment and those patients who needed the proper treatment in order to survive.” Id. at 197.[5] As I observed in Stone:
Such a differentiation is necessary because only those in the latter group have truly suffered a “lost opportunity” as a result of the improper treatment. That is, if a patient would have survived regardless of whether he received proper or improper treatment, the improper treatment cannot be said to have caused him to lose an opportunity to survive. On the other hand, if the patient would have survived only if he had received the proper treatment, the improper treatment can be said to have caused him to lose an opportunity to survive. MCL 600.2912a(2) requires us to determine whether the patient more likely than not fell into the latter category rather than the former category, *521 because the statute only allows a plaintiff to recover for a “loss of an opportunity” that was “greater than 50%” and that was “caused by the negligence of the defendant.. ..” Dr. Waddell’s calculation does just that:
(Premalpractice chance) - (Postmalpractice chance)
100 - (Postmalpractice chance)
The quotient resulting from this numerator and denominator is then multiplied by 100 to obtain a percentage. This number must be “greater than 50%” in order to satisfy the requirement of the second sentence of MCL 600.2912a(2). For instance, if the patient’s premalpractice chance to achieve abetter result was 80 percent and, as a result of the defendant’s malpractice, the patient’s postmalpractice chance is reduced to 20 percent, the patient has suffered a 75 percent loss of an opportunity to survive.[6]
What the Waddell formula essentially does is test the sufficiency of the expert testimony, which is typically presented in the form of two statistics: the likelihood that a patient would have had a good outcome with proper treatment (the “[premalpractice chance]”) and the likelihood that a patient would have had a good outcome with negligent treatment (the “[postmalpractice chance]”). The Waddell formula allows a court analyzing this data to determine whether the plaintiff, when the patient has experienced a bad outcome, has created a question of material fact concerning whether proper treatment more likely them not would have made a difference. The formula does this by identifying the universe of patients who would have had a bad outcome (the denominator) and the subset of those patients who could have been favorably treated (the numerator).
It is easiest to start with the formula’s denominator. This denominator consists of the universe of all patients who would have had a bad outcome, for whatever reason. This group includes two subsets of patients: those who would have had a bad outcome because they received negligent treatment, and those who would have had a bad outcome despite receiving proper treatment. The formula *522 identifies this group by subtracting from 100 the percentage of patients who would have had a good outcome even without proper treatment; in other words, it subtracts the “[postmalpractice chance]” from 100. In this way, a court can take the expert’s statistics and identify those patients who were not treated properly and who experienced a bad outcome. A patient who is the subject of a medical-malpractice action is a member of this group. But we cannot determine whether the patient is a member of this group because he or she was denied the proper treatment or because he or she would have suffered a bad outcome even with proper treatment.
One more calculation must then be made in order to answer the dispositive question posed by the statute: whether it is more likely than not that the patient would have benefited from proper treatment or, put another way, whether the “opportunity to survive or. .. to achieve a better result” was “greater than 50%.” MCL 600.2912a(2). A court has to determine what percentage of those patients with a bad outcome (those patients in the denominator) would have benefited from treatment. This brings us to the Waddell formula’s numerator. The numerator consists of those patients who would have had a bad outcome only if they had been negligently treated. It is calculated by subtracting the “[postmalpractice chance]” from the “[premalpractice chance],” thus identifying those patients who required treatment to avoid a bad outcome.
Once the numerator and denominator have been calculated, comparison of these two numbers by their quotient allows a court to reasonably determine whether improper treatment more likely than not made a difference in the patient’s outcome. If the number of patients who would have had a bad outcome only if they had been negligently treated (the numerator) comprises more than half of the number of patients who would have had a bad outcome overall (the denominator), then the plaintiff has established that proper treatment more likely than not would have made a difference. In other words, when this has been shown, the plaintiff has created a question of material fact concerning whether the “opportunity” — the benefit that *523 would have been realized by a group of patients from the treatment that was not given to this specific patient — was greater than 50 percent. Such a plaintiff has presented adequate expert testimony to establish a “lost opportunity” cause of action within the meaning of the statute.
As Dr. Waddell has explained:
“[T]he intent of the law is to disallow damages unless it can be shown that proper treatment creates a better than even (“greater than 50%”) chance of survival of the patients who would have died without treatment. In other words, if appropriate treatment cannot save at least half of the patients who otherwise would have died, then you do not have sufficient evidence to show that the negligence made the difference in the adverse outcome (death). Conversely, if good treatment can save more than half of the patients who otherwise would have died, then you have adequate evidence that the poor treatment or negligence was likely to blame for the bad outcome. This is exactly what this definition of opportunity measures.” [Waddell, 86 Mich B J at 33 (emphasis in original).]
MCL 600.2912a(2) only allows a plaintiff to recover for a “loss of an opportunity” that was “greater than 50%” and that was “caused by the negligence of the defendant . . . .” Use of Dr. Waddell’s formula, which generates the actual percentage lost rather than the number of percentage points lost, and excludes those who would have achieved a good result regardless of the malpractice, best ensures, in my judgment, that these statutory requirements are satisfied. That is, this calculation would impose liability, in accordance with MCL 600.2912a(2), in those instances in which the medical care received more likely than not affected whether the patient survived. [Id. at 197-202.]
III. APPLICATION
In the instant case, plaintiff alleged that defendants failed to timely and properly treat his acute chest syndrome, a serious complication of sickle-cell *524 disease, and that, as a result, he suffered a stroke. More specifically, plaintiff alleged that defendants should have performed an exchange blood transfusion in which the patient’s abnormal blood is taken out and replaced with normal blood, rather than a simple blood transfusion in which normal blood is simply added to the patient’s abnormal blood.[7] Plaintiffs expert witness testified that there was a 10 to 20 percent chance of stroke without proper treatment, but that with proper treatment there would have been only a 5 to 10 percent chance of stroke. In other words, with proper treatment plaintiff had a 90 to 95 or more percent chance of not suffering a stroke, and without proper treatment he had an 80 to 90 percent chance of not suffering a stroke. That is, plaintiffs premalpractice chance to achieve a better result was, at best, 95 percent, and his postmalpractice chance was, at worst, 80 percent. Pursuant to the Waddell calculation, plaintiff lost a 75 percent opportunity to achieve a better result:
[[Image here]]
Therefore, plaintiff has raised a genuine issue of material fact regarding whether he suffered a greater than 50 percent loss of an opportunity under MCL 600.2912a(2). For these reasons, I agree with the majority that the judgment of the Court of Appeals should be reversed and this case should be remanded to the Court of Appeals for it to consider defendants’ remaining issue on appeal, i.e., the admissibility of the expert witness testimony proffered by plaintiff.
*525 IV MAJORITY’S ANALYSIS
Although I agree with the majority that the Court of Appeals should be reversed, I strongly disagree with its analysis.
A. LOST OPPORTUNITY VS. TRADITIONAL MEDICAL MALPRACTICE
1. GREATER-THAN-50-PERCENT REQUIREMENT
On the one hand, the majority concludes that whether the plaintiffs lost opportunity is greater than 50 percent determines whether the plaintiffs action is a lost-opportunity action or a traditional medical-malpractice action. I find this conclusion to be completely illogical. Either the defendant’s negligence has caused the plaintiff to suffer the injury, or it has caused the plaintiff to suffer a loss of an opportunity to achieve a better result— the better result being not to suffer the injury. How substantial the plaintiffs lost opportunity is determines whether he satisfies the “greater than 50%” requirement of MCL 600.2912a(2), not whether the plaintiffs action constitutes a lost-opportunity action in the first place. As I stated in Stone:
In order to satisfy traditional medical-malpractice action requirements, there must be no question that the proper treatment would have resulted in a good outcome (at least with regard to the specific injury suffered by the patient), because if there is any chance that a patient who received proper treatment might nevertheless have suffered the specific bad outcome ultimately suffered by the patient, it cannot be proved that the improper treatment caused the bad outcome. If there is any chance that the proper treatment could have resulted in the bad outcome, the chances of a good outcome with proper treatment and the chances of a good outcome with improper treatment must be compared. That is, under those circumstances, although the plaintiff cannot prove that the defendant’s *526 malpractice caused the bad outcome because the bad outcome might have occurred even with proper treatment, the plaintiff may be able to prove that the defendant’s malpractice increased the patient’s chances of obtaining a bad outcome and, thus, caused him or her to suffer a “lost opportunity” to achieve a better result. This is the only coherent concept of a “lost opportunity” cause of action under MCL 600.2912a(2). [Stone, 482 Mich at 271 (opinion by Markman, J.).]
Because it is possible that the bad outcome in this case, i.e., suffering a stroke, might have occurred even if plaintiff had received proper treatment, the instant case constitutes a lost-opportunity action.
2. PLAINTIFF’S PLEADINGS
On the other hand, the lead opinion concludes that “the second sentence of § 2912a(2) applies only to medical malpractice cases that plead loss of opportunity and not to those that plead traditional medical malpractice . . . . ” That is, the lead opinion concludes that whether the plaintiffs action constitutes a lost-opportunity action or a traditional medical-malpractice action is a function of whether the plaintiff has used the magic words “lost opportunity” in his pleading. If he did not, the action is a traditional medical-malpractice action and the plaintiff need not concern himself with satisfying the greater-than-50percent requirement of MCL 600.2912a(2). However, if the plaintiff did use the words “lost opportunity” in his pleading, the action is a lost-opportunity action and the plaintiff must satisfy the greater-than-50percent requirement of MCL 600.2912a(2). Besides being utterly inconsistent with the majority’s own conclusion that a lost opportunity greater than 50 percent determines whether the plaintiff’s action constitutes a lost-opportunity action or a traditional *527 medical-malpractice action, it is also inconsistent with the well-established principle that Michigan courts are “not bound by a party’s choice of label for its action [because this would] put form over substance . ...” St Paul Fire & Marine Ins Co v Littky, 60 Mich App 375, 378-379; 230 NW2d 440 (1975). Instead, as we explained in Maiden v Rozwood, 461 Mich 109, 135; 597 NW2d 817 (1999), “the gravamen of plaintiff’s action is determined by considering the entire claim.” (Emphasis added.)
Thus, just as whether a plaintiff labels an action as an ordinary negligence action does not control whether that action is, in fact, an ordinary negligence action or a medical-malpractice action, see Bryant v Oakpointe Villa Nursing Ctr, Inc, 471 Mich 411; 684 NW2d 864 (2004), whether a plaintiff labels an action as a traditional medical-malpractice action or a lost-opportunity action cannot control whether the plaintiffs action is, in fact, a traditional medical-malpractice action or a lost-opportunity action. This established principle ensures that the governing law, and not the label the parties attach to that law, controls the outcome of an action. As the United States Supreme Court' has observed, any other approach would allow a party to avoid the requirements of a legislative mandate simply by artful pleading. See Allis-Chalmers Corp v Lueck, 471 US 202, 211; 105 S Ct 1904; 85 L Ed 2d 206 (1985). Yet this is exactly what the lead opinion would allow a plaintiff to do in relation to the requirements of MCL 600.2912a(2). Apparently, according to the justices joining the lead opinion, all a plaintiff need do to avoid the “greater than 50%” requirement in MCL 600.2912a(2) is to omit the words “lost opportunity” in his complaint. Thus, no artfulness is even required to nullify this particular statute under their theory.
*528 Indeed, in light of the lead opinion, the discussions in the various opinions in this case concerning appropriate formulas for determining loss of opportunity seem pointless. For what plaintiff, and what competent plaintiffs attorney, would ever plead a lost-opportunity claim if it could be so easily avoided? Simply put, under the lead opinion’s rule, would the lost-opportunity doctrine enacted by the Legislature even continue to exist as a viable legal doctrine in this state? Would a court have any power to apply the actual law, or would it be required to participate in a charade of the plaintiffs (and the lead opinion’s) making? As an example, could a public official plaintiff avoid having to prove actual malice in a defamation case by simply leaving the words “public official” out of his pleading? Could a plaintiff suing a public entity entitled to governmental immunity avoid such immunity by simply omitting that the defendant is a public entity from his pleading? Could an independent contractor transmute himself into an employee by simply asserting such in his pleading?
B. WHICHEVER FORMULA BEST SERVES THE PLAINTIFF
The lead opinion offers no explanation, and I can think of none, to support its alternative “standard percentage increase calculation” formula, other than the fact the justices signing the lead opinion believe that it somehow indicates that plaintiff has suffered a 300 percent loss of an opportunity! However, none of this really seems to matter to the justices signing the lead opinion because in the end they conclude that MCL 600.2912a(2) does not require “any particular mathematical formula,” and that if “either calculation,” or, indeed, some other yet-to-be-discovered calculation, demonstrates a greater than 50 percent lost opportunity, the plaintiffs case may proceed, because “the *529 results must be viewed in the light most favorable to the nonmoving party.” This is simply nonsensical. Although it is true that evidence is to be viewed in a light most favorable to the nonmoving party, Dressel v Ameribank, 468 Mich 557, 561; 664 NW2d 151 (2003), which, as in this case, will almost invariably be the plaintiff, this is the first I have heard of a judicially created rule that we are to construe an unambiguous law in a light most favorable to one side or the other. Needless to say, and for reasons that are apparent, the lead opinion does not bother to cite any authority in support of such a rule. Is there some logical reason for this rule other than an apparent desire by the lead justices to place a finger on the scales of justice on behalf of the plaintiff class? Is this rule limited to lost-opportunity cases or is it equally applicable to all medical-malpractice actions? Why is such a rule appropriate in a lost-opportunity case, but not in other realms of the civil law? When is such a default interpretation of the law warranted, and when is it not? If the law does not require “any particular formula,” why does the lead opinion devote such attention to identifying the two formulas that it does identify? Why not just devise a third formula under which the plaintiff will always prevail? Could it possibly be that the lead justices may be confusing their own personal political philosophies with the dictates of the actual law that they pledged to uphold?[8]
*530 v CONCLUSION
As I summarized in Stone:
A “lost opportunity” action is one in which it is possible that the bad outcome would have occurred even if the patient had received proper treatment. On the other hand, if there is no question that the proper treatment would have resulted in a good outcome and the patient has suffered a bad outcome, the plaintiff possesses a traditional medical-malpractice action. In order for a traditional medical-malpractice plaintiff to prevail, the plaintiff must prove that the bad outcome was more probably than not caused by the defendant’s malpractice. In order for a “lost opportunity” plaintiff to prevail, the plaintiff must prove that the “lost opportunity” to achieve a better result was more probably than not caused by the defendant’s malpractice and that the “lost opportunity” was greater than 50 percent. In order to determine whether the “lost opportunity” was greater than 50 percent, the postmalpractice chance of obtaining a better result must be subtracted from the premalpractice chance; the postmalpractice chance must then be subtracted from 100; the former number must be divided by the latter number; and then this quotient must be multiplied by 100 to obtain a percentage. The calculation can be summarized as follows:
(Premalpractice chance) - (Postmalpractice chance)
100 - (Postmalpractice chance)
If this percentage is greater than 50, the plaintiff may be able to prevail; if this percentage is 50 or less, then the plaintiff cannot prevail. [Stone, 482 Mich at 218-219 (opinion by Markman, J.).][9]
*531 As discussed earlier, because it is possible that the bad outcome in this case, i.e., suffering a stroke, would have occurred even if plaintiff had received proper treatment, the instant case is, in fact, a lost-opportunity action, and because plaintiff has raised a genuine issue of material fact regarding whether he suffered a greater than 50 percent loss of an opportunity under MCL 600.2912a, I agree with the majority that the judgment of the Court of Appeals should be reversed and this case should be remanded to the Court of Appeals for it to consider defendants’ remaining issue on appeal, i.e., the admissibility of the expert witness testimony proffered by plaintiff.
However, I emphatically disagree with the majority’s incoherent analysis and the implications of such analysis. The majority effectively transforms a lost-opportunity action into a traditional medical-malpractice action, for no other apparent reason than to afford plaintiffs larger potential recoveries. Instead of limiting a plaintiffs recovery to the opportunity that he or she may have lost as a result of the defendant’s negligence, the majority now expands the plaintiffs recovery to include potentially all damages related to his medical condition, even though the plaintiff may well have suffered the condition even had he received perfect medical treatment. Thus, having already undermined the Legislature’s attempt at medical-malpractice reform, see, e.g., Bush v Shabahang, 484 Mich 156; 772 *532 NW2d 272 (2009); Potter v McLeary, 484 Mich 397; 774 NW2d 1 (2009); and ADM File No. 2009-13, 485 Mich cclxxv (order entered February 16, 2010, amending MCR 2.112 and 2.118), the majority now embarks upon transforming medical-malpractice law in exactly the opposite direction of that sought by the Legislature. At the same time, the differing formulas, and non-formulas, adopted by the majority, as well as the internal inconsistencies in its analysis, will only produce more confusion in an already confused area of the law, and more litigation in an already heavily litigated area of the law. The clearest principle of law that can be gleaned from the lead opinion is also the least principled of its asserted principles — the adoption of whichever formula best serves the plaintiff. Not much more than this “principle” really needs to be understood concerning the essence of the lead opinion’s analysis.
CORRIGAN, J., concurred with MARKMAN, J., with respect to parts IV(A)(2) and (B).

1 For a discussion of the common law that existed before the enactment of this statutory provision, see my opinion concurring in the result in Stone v Williamson, 482 Mich 144; 753 NW2d 106 (2008) (opinion by Maekman, J.).

 As I did in Stone, I use the term “premalpractice chance” to refer to the plaintiffs chance to survive or achieve a better result with proper treatment, and the term “postmalpractice chance” to refer to the plaintiffs chance to survive or achieve a better result without proper treatment.

 Because a majority of justices now believes that neither Fulton nor the instant case are lost-opportunity cases, Fulton is now apparently *517 overruled at least with regard to the determination concerning whether a case is a traditional medical-malpractice action or a lost-opportunity action. However, because a majority of the justices conclude that the instant case is not a lost-opportunity case, Fulton’s method of analyzing lost-opportunity cases is unaffected by the decision in this case.

 “By contrast, if there is no question that the proper treatment would have resulted in a good outcome, then the patient who has suffered a bad outcome has a traditional medical-malpractice action.” Stone, 482 Mich at 186 (opinion by Markman, J.).

 Although the majority describes their formula in considerably different terms than I did in Stone, the same result is produced under either formula. That is, regardless of whether the formula is described as I do
(Premalpractice chance of better result) - (Postmalpractice chance of better result) /
100 - (Postmalpractice chance of better result)
or, as the majority now does
(Postmalpractice chance of worse result) - (Premalpractice chance of worse result) /
(Postmalpractice chance of worse result)
the same figure is obtained. Given Justice Cavanagh’s forcefid criticisms of my formula in Stone, it is encouraging that we are now in agreement on this critical point. See, e.g., Stone, 482 Mich at 183-184 (opinion by Cavanagh, J.) (“the Waddell formula [which I adopted in Stone and to which I continue to adhere] is blatantly inconsistent with the language of MCL 600.2912a(2)”; “[i]t is inconceivable that Justice Markman can read the [statute] and conclude that it should be translated into this formula”; “[t]he approach taken by Justice Markman and Dr. Waddell requires [the statute] to be rewritten”; “the Waddell approach leads to such anomalous results that it cannot possibly reflect the intention of the Legislature”). While Justice Cavanagh is correct that he employs the formula to determine whether plaintiffs cause of action is a traditional medical-malpractice action or a lost-opportunity action, and I use it to determine whether plaintiff has satisfied the greater-than-50-percent requirement, we agree nonetheless that the number produced by the formula represents the opportunity that the plaintiff lost as a result of the defendant’s negligence.

6 80-20/100-20 x 100 = 75%

 An exchange blood transfusion was not performed until after plaintiff suffered a stroke. As a result of the stroke, plaintiff suffers from partial paralysis of his left leg and complete loss of function of his left hand and arm.

 The lead opinion indicates that the justices signing that opinion now support “Justice Cavanagh’s partial dissent in Wickens [v Oakwood Healthcare Sys, 465 Mich 53; 631 NW2d 686 (2001)] that a living person may pursue a claim for loss of opportunity under the circumstances presented in that case.” What this gratuitous observation has to do with the instant case, I have not a clue. Do the justices signing the lead opinion also support Justice Cavanagh’s dissent in People v Gardner, 482 Mich 41; 753 NW2d 78 (2008), or any one of his other random dissents? Given that three justices previously supported Justices Cavanagh’s partial dissent in Wickens (Chief Justice Kelly and Justices Cavanagh and Weaver), by *530 indicating that she now supports it Justice Hathaway seems to be signaling that there is now majority support in favor of his position in that case. Unfortunately, this type of behavior seems to have become the new majority’s modus operandi — unnecessarily sowing uncertainty, doubt, and confusion into the law by gratuitously questioning prior cases decided by the former majority. For more discussion on this, see my dissent in McCormick v Carrier, 487 Mich 180, 266-274; 795 NW2d 517 (2010).

9 However, the present status of the law seems to be, pursuant to the lead opinion and Justice Cavanagh’s concurring opinion, that if the *531 plaintiffs lost opportunity is greater than 50 percent (the calculation of which is anyone’s guess in view of the different tests of these two opinions), the plaintiff can bring a traditional medical-malpractice action, but, if the plaintiffs lost opportunity is not greater than 50 percent, then the plaintiff can only bring a lost-opportunity action. And, pursuant to Fulton, a lost-opportunity plaintiff must prove that the difference between his premalpractice chance of achieving a better result and his postmalpractice chance of achieving a better result is greater than 50 percentage points. Neither of these conclusions is, to say the least, consistent with my own reading of the statute.